

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*86 Chambers Street*
*New York, New York 10007*

March 13, 2026

**VIA ECF**
The Honorable Lorna G. Schofield
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square, Room 415
New York, NY 10007-1312

The Government's stay request is **DENIED** without prejudice to renewal in the next status letter. The parties shall file a status letter by **April 13, 2026**. So Ordered.

Dated: March 16, 2026
New York, New York

Re:    Women's Refugee Comm'n v. United States Dep't of Homeland Security,
       25-cv-7982 (LGS)

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

Dear Judge Schofield:

This Office represents defendants the United States Department of Homeland Security ("DHS"), United States Immigration and Customs Enforcement ("ICE"), and United States Customs and Border Protection ("CBP") (collectively, the "Government") in the above-referenced action filed by plaintiff Women's Refugee Commission ("Plaintiff" or "WRC") under the Freedom of Information Act, 5 U.S.C. § 552 *et seq*. ("FOIA"). Plaintiff's FOIA requests seek records and information relating to: (1) the Government's treatment of pregnant, postpartum, or lactating women in federal immigration detention; and (2) allegations or complaints of sexual assault and/or harassment by female federal immigration detainees. Pursuant to the Court's Memo Endorsement dated February 12, 2026 (ECF No. 26), the parties respectfully submit this joint letter to update the Court on the status of the Government's responses to Plaintiff's FOIA requests, and to apprise the Court that due to the lapse in congressional funding, defendants' FOIA offices are not operating and are presently unable to search for or process records in response to Plaintiff's FOIA requests. As such, the Government respectfully requests a stay of this action until funding is restored. Plaintiff opposes the request for a stay because DHS has never publicly disclosed on its website or in its publications that its FOIA operations are allegedly closed, and because the Government has represented that DHS counsel who, as part of the parties' ongoing negotiations in this lawsuit regarding the scope of DHS's searches, reviewed certain case hits to determine potential responsiveness, is not furloughed. Accordingly, Plaintiff's position is that even if some FOIA staff are furloughed, there is no reason to stay this case entirely. If this action is stayed, the parties respectfully propose filing another joint status letter 30 days after the date the President signs a bill restoring DHS funding, or, if this action is not stayed, within 30 days of the date of this letter (by April 13, 2026).

## A. Procedural History

On June 26, 2025, Plaintiff submitted 11 FOIA requests to ICE. The requests seek "[a]ny and all records" stored or maintained by the ICE Health Service Corps ("IHSC") "regarding all individuals known to be pregnant, postpartum, and nursing detained in ICE custody"; "[a]ny and all records . . . relating to pregnancy, postpartum, and lactation"; and data compilations showing the total number of individuals ICE has identified as pregnant while in ICE custody broken down by month and detention facility, the total number of incidents of miscarriages and live births in

ICE detention, and with respect to every pregnant, postpartum, or lactating person so identified, the place(s) of detention, initial detention and release dates, the number of times each person was treated at an outside medical facility for any condition, and the circumstances/authority for their release from detention and/or removal/departure from the United States.  Plaintiff also requested all records "relating to or embodying" any amendments to a 2021 ICE policy directive relating to pregnant, postpartum, or nursing individuals, and all updates, amendments, and attachments to two other ICE policies.  The time period of the request is January 20, 2025, to the present. Plaintiff also asked ICE to "please construe this as an ongoing FOIA request, so that any records that come within the possession of the agency prior to your final response to this FOIA request should also be considered within the request's scope."  On July 30, 2025, in response to ICE's representation that "narrowing the scope may speed up the search process," Plaintiff proposed narrowing its FOIA requests to only seek "data that is directly required per the 2021 Pregnancy Policy Directive issued by U.S. Immigration and Customs Enforcement entitled 'Identification and Monitoring of Pregnant, Postpartum, or Nursing Individuals' (Directive 11032.4, issue date July 1, 2021)."  Compl. (ECF No. 1) ¶ 26.  ICE did not respond to this communication before the commencement of this action.

On June 26, 2025, Plaintiff submitted 11 FOIA requests to CBP.  The requests seek "[a]ny and all records stored or maintained" by CBP "regarding all individuals known or reported to be pregnant and have identified medical concerns or are in their last trimester, postpartum or have recently experienced a pregnancy loss, in active labor, and nursing detained in CBP custody."  Plaintiff also requested "[a]ny and all records . . . relating to pregnancy, postpartum, active labor, recent pregnancy loss and lactation," and data compilations showing the total number of individuals CBP has identified as pregnant while in CBP custody broken down by month and detention facility, the total number of incidents of miscarriages and live births in CBP custody, the total number of U.S. citizen newborns held in CBP custody and the length of detention broken down by month and CBP facility, and with respect to every pregnant, postpartum, or lactating person so identified, the place(s) of detention, initial detention and release dates, the number of times each person was treated at an outside medical facility for any condition, and the circumstances/authority for their release from detention.  Plaintiff also requested "all records" "relating to or embodying" any amendments to a 2021 CBP pregnancy directive, and all amendments to two other CBP directives.  The time period of the request is August 18, 2021, to the present.

On July 23, 2025, Plaintiff submitted FOIA requests to DHS for records, data, and communications maintained by the DHS Office of Civil Rights and Civil Liberties ("CRCL") regarding sexual assault/misconduct, pregnancy, and related medical care.  As discussed below, the parties disagree regarding the time period of these requests.  Plaintiff's position is that the time period requested is October 1, 2023, to the date of the search.  DHS's position is that the time period requested is October 1, 2024, to the date of the search.

Plaintiff commenced this action on September 25, 2025.  See Compl. (ECF No. 1).  On September 30, 2025, the Court entered an Order directing the parties to negotiate a schedule for the search, processing, and potential production of responsive documents, and file a joint letter by October 30, 2025, apprising the Court of that schedule and whether an initial pretrial conference is necessary to resolve any open issues.  See Order (ECF No. 6).  Due to the suspension of certain government activities, this case was stayed from October 1 to November

2

12, 2025, and the October 30 joint letter deadline was tolled. See Amend. Standing Order, Oct. 2, 2025, In re: Stay of Certain Civil Cases Pending the Restoration of Department of Justice Funding, M10-468, 25-mc-00433-LTS (S.D.N.Y.) (ECF No. 3) (tolling deadlines for a period of time equal to the number of calendar days between September 30, 2025, and the date the President signs into law a budget appropriation that restores Department of Justice funding); see Order, dated Oct. 17, 2025 (ECF No. 11) (noting that this action is subject to the Amended Standing Order). On November 18, 2025, the Court entered an Order directing the parties to file the joint letter by December 5, 2025 (ECF No. 17), and subsequently extended that deadline to January 9, 2026 (ECF No. 19). Accordingly, the parties filed a joint status letter on January 9 (ECF No. 20), and the Government filed its answer to the complaint on the same date (ECF No. 21). On January 12, 2026, the Court endorsed the parties' January 9 joint status letter and directed the parties to file another joint status letter by February 9, 2026. See Mem. Endorsement (ECF No. 22). On February 11, after the Court granted a two-day extension, see Order (ECF No. 24), the parties filed their joint status letter, see Ltr. (ECF No. 25), which the Court endorsed and directed the parties to file another joint status letter by March 13, 2026, see Mem. Endorsement (ECF No. 26).

## B. The Current Partial Shutdown and the Government's Request to Stay this Action

On February 14, 2026—three calendar days after the parties' February 11 joint status letter—DHS appropriations lapsed. As a result, certain activities of DHS and many of its components, including its FOIA functions, are suspended. See Antideficiency Act, 31 U.S.C. §§ 1341-42, 1349-51, 1511-19 (prohibiting federal employees from obligating or spending money before it is officially appropriated by Congress). While certain "exempt" DHS functions that have other funding sources may continue operations notwithstanding the current lapse in appropriations, there is currently no funding source for DHS's FOIA operations. Nor does FOIA processing generally fall within the exceptions to the Antideficiency Act. See 31 U.S.C. § 1342 (permitting certain activities necessary for "the safety of human life or the protection of property" during a lapse in appropriations). As a result, at this time, defendants cannot search for or process records in response to Plaintiff's FOIA requests and cannot meaningfully engage in this litigation or participate in the defense of this action. While certain DHS attorneys are not furloughed, the staff responsible for running searches and processing records in response to FOIA requests are not funded. Since the next steps in this litigation involve additional searches and processing (as detailed below), defendants are presently unable to substantively work on Plaintiff's FOIA requests. Accordingly, the Government respectfully requests that the Court stay this action until DHS funding is restored, and proposes that the parties file a joint status letter within 30 days after the date the President signs into law a budget appropriation that restores DHS funding. Because these issues implicate fundamental limitations on the Executive Branch's ability to obligate resources in the absence of a congressional appropriation, see U.S. Const. art. I, § 8, cl. 1 (Spending Clause), § 9, cl. 7 (Appropriations Clause); Antideficiency Act, the Government requests an opportunity for formal briefing if the Court does not issue a stay on the basis of this letter-motion.

Plaintiff objects to the request for a stay. While it is unclear what Defendants mean by their inability to "*meaningfully* engage in this litigation or participate in the defense of this action" (emphasis added), Plaintiff understands that at least some legal personnel involved in FOIA operations are still working. Plaintiff further understands that, contrary to the assertion

3

that "there is currently no funding source for DHS's FOIA operations," certain offices involved in FOIA compliance, such as ICE's Office of the Principal Legal Advisor, are fully funded through fiscal year 2029 under OB 3 (Account 070-25/29-0540, Pub. L. 119-21, Title IX), a separate statutory account expressly delineated in DHS's budget submissions to Congress.  See Pub. L. 119-21, Title IX; Monthly Budget Execution and Staffing Report - September 2025, Account 070-25/29-0540.  In addition, DHS has never publicly disclosed that its FOIA operations are allegedly closed.  See Dep't of Homeland Sec., Freedom of Information Act, https://www.dhs.gov/foia (notifying requesters that, effective January 22, 2026, the agency is no longer accepting hard copy or emailed FOIA requests but not indicating that FOIA offices are shut).  Indeed, the February 17, 2026 press release it issued, which purports to describe the ways in which "each of the individual components at the DHS will be impacted" by the shutdown, says nothing about FOIA.  See Dep't of Homeland Sec., Another Democrat Government Shutdown Dramatically Hurts America's National Security (Feb. 17, 2026).  In this sense, the partial shutdown appears to Plaintiff to be a convenient excuse for the agency to avoid its FOIA obligations even as its operations continue, with more people arrested and detained every day.  Plaintiff requests that the case not be stayed and that those components that *are* funded continue to move the identification of responsive records forward.  In the alternative, Plaintiff requests that, if the case is stayed, all searches for responsive records be run through a date *after* the stay is lifted; otherwise, Plaintiff, which sought records through the date of the search, will continue to pay the price for the delays without reaping any corresponding benefit.

### C. <u>Plaintiff's FOIA Requests to ICE</u>

Due to the large backlog of FOIA requests at ICE, staffing and resource shortages, and the broad scope of Plaintiff's requests in this case, ICE was unable to respond to Plaintiff's FOIA requests prior to the commencement of this action.  Following counsel's meet-and-confer discussions, Plaintiff agreed to narrow its ICE FOIA requests to seek the following information, listed in the following order of priority, for the time period January 20, 2025, through the date ICE commenced its search:

1. All versions of the 2021 ICE Pregnancy Directive, IHSC Policy No. 04-02, "Women's Medical Care" ("IHSC Women's Medical Care Policy"), and all other IHSC policies regarding the provision of medical care to women in ICE custody, including all amendments, modifications, additions, deletions, or other changes to such policies;

2. The monthly reports submitted by IHSC to the Executive Associate Director for ICE Enforcement and Removal Operations ("ERO") regarding pregnant, postpartum, and nursing individuals detained in ICE custody, pursuant to Paragraph 2.2 of ICE Directive 11032.4, "Identification and Monitoring of Pregnant, Postpartum, or Nursing Individuals," July 1, 2021, *available at* https://www.ice.gov/doclib/detention/11032.4_IdentificationMonitoringPregnantPostpart umNursingIndividuals.pdf ("ICE 2021 Pregnancy Directive");

3. Grievances and requests received by ICE from persons in ICE detention relating to pregnancy, postpartum care, and lactation, excluding any medical records; and

4.   All official versions of ICE Policy No. 11020.1, "Use of GPS Monitoring Devices on Persons who are Pregnant or Diagnosed with a Severe Medical Condition" (Sept. 14, 2009) ("ICE GPS Monitoring Policy"), including attachments.

Plaintiff reserved its right to request at a later time communications regarding the ICE 2021 Pregnancy Directive, IHSC Women's Medical Care Policy, and ICE GPS Monitoring Policy; as well as detainees' medical records related to any grievances responsive to request #3 above.

During counsel's meet-and-confer on February 9, 2026, Plaintiff's counsel advised that, notwithstanding her review and approval of last month's joint status letter, Plaintiff's view is that the January 9 status letter misstates the parties' agreement. According to Plaintiff, although ICE FOIA Request Nos. 6.c(i), (ii), and (iii) are not encompassed by the four categories of records described above, Plaintiff's position is that it has not agreed to forgo those requests. ICE's position is that the January 9 status letter—which was reviewed and approved by all parties— accurately states the parties' agreement. Counsel will continue to meet and confer regarding FOIA Request Nos. 6.c(i), (ii), and (iii) and will advise the Court if relief is requested.

On January 21, 2026, ICE issued a release in response to the four narrowed requests detailed above. The release letter and production were made available to Plaintiff on January 23, 2026. An amended response letter, correcting certain non-substantive errors in the original letter, was provided on January 29, 2026. The release contained one responsive Excel spreadsheet which was produced in part and withheld in part pursuant to FOIA Exemptions 5 U.S.C. § 552(b)(6) and (b)(7)(C). A cover letter accompanying the release additionally stated that ICE had located three responsive policy documents that are "publicly available on the ICE website at https://www.ice.gov/foia/library." On February 9, 2026, ICE identified a fourth policy document on ICE's public FOIA Library website that is responsive to Plaintiff's FOIA requests.

Plaintiff is evaluating ICE's response and has requested additional information regarding the scope of the search and response. In response to Plaintiff's inquiries, ICE has agreed to perform additional searches in an effort to locate additional responsive records. However, the ICE FOIA office was furloughed on February 14, 2026, before those searches were completed. ICE will resume its searches once funding is restored. Counsel will continue to meet and confer regarding these circumstances and will update the Court in the next status letter as to the parties' positions and any proposed next steps.

### D. Plaintiff's FOIA Requests to CBP

Due to the large backlog of FOIA requests at CBP, staffing and resource shortages, and the broad scope and time period of Plaintiff's requests in this case, CBP was unable to respond to Plaintiff's FOIA requests prior to the commencement of this action. Following counsel's meet-and-confer discussions, Plaintiff agreed to narrow its CBP FOIA requests to seek the following information, listed in the following order of priority, for the time period August 18, 2021, through the date CBP commenced its search:

1.   All versions of each of the following CBP policies, including all updates, amendments, and attachments thereto:

    a. "U.S. Customs and Border Protection Policy Statement and Required Actions Regarding Pregnant, Postpartum, Nursing Individuals, and Infants in Custody," dated November 20, 2021 ("CBP 2021 Pregnancy Directive");

    b. CBP Directive No. 2210-004, Enhanced Medical Support Efforts, dated December 30, 2019 ("CBP EMS Directive"); and

    c. CBP Directive No. 2210-004, Enhanced Medical Support Efforts, dated May 21, 2024 ("CBP EMS Supplemental Directive");

2. Information maintained by CBP pursuant to Section H of the CBP 2021 Pregnancy Directive;

3. Grievances and requests received by CBP from persons in CBP custody relating to pregnancy, postpartum, active labor, recent pregnancy loss, and lactation, excluding any medical records; and

4. All versions of the following CBP policies, including all updates, amendments, and attachments thereto:

    a. CBP Directive No. 3340-025F, Reporting Significant Incidents to U.S. Customs and Border Protection WATCH, dated November 2, 2021 ("CBP Significant Incidents Directive"); and

    b. CBP Directive No. 3340-026, Significant Event Reporting, dated May 11, 2021 ("CBP SER Reporting Directive").

Plaintiff reserved its right to request at a later time communications regarding the CBP policies identified in requests #1 and #4 above; as well as detainees' medical records related to any grievances responsive to request #3 above.

In response to Plaintiff's narrowed FOIA requests, CBP's FOIA Division conducted a search of the following components' records: (1) CBP Office of Chief Medical Officer; (2) U.S. Border Patrol – e3 Data; (3) CBP Office of Field Operations; (4) CBP Complaints Branch; and (5) CBP Watch Command for Significant Incident Reports. The first four components' searches were completed before the lapse in funding and identified two large Excel spreadsheets containing potentially responsive information. The fifth component—CBP Watch Command for Significant Incident Reports—commenced but did not complete its searches prior to the partial Government shutdown. Once funding is restored, CBP Watch Command for Significant Incident Reports will complete its searches and CBP will process the potentially responsive records at a rate of 350 pages per month. CBP will make all reasonable efforts to process the records in the order of priority requested by WRC. Although CBP had previously agreed to make its first rolling release by March 15, and on the 15th of every month thereafter, it will no longer be able to meet these deadlines due to the lapse in appropriations for FOIA activities. Once funding is restored, counsel will meet and confer to discuss a new release schedule.

### D. **Plaintiff's FOIA Requests to DHS**

Plaintiff's July 23, 2025, FOIA requests to DHS seek the following information:

1.  Records or data contained in the CRCL complaint database relating to cases for which the "summary of allegation" field in the database contains one or more of the following search terms: breast, birth, caretaker, family court, guardian, inappropriate touch, labor, lactation, menstrual, nursing, feminine, grope, miscarriage, non-consensual, consent, partum, parent, penetration, pregnant, pregnancy, rape, sanitary pad, separation, sexual abuse, sexual assault, sexual contact, sexual harassment, tampon, touch, vagina, welfare, and voyeurism; and

2.  Electronic messages received by the crclcompliance@hq.dhs.gov email inbox containing any of those same search terms.

The parties disagree as to the requested date range for Plaintiff's FOIA requests to DHS. Each of Plaintiff's four FOIA letters to DHS, attached as Exhibits C to F to the complaint, specify under the heading "Specific records requested" that the requested date range is October 1, 2024, to the date of the search.  See ECF Nos. 1-3 at 3, 1-4 at 3, 1-5 at 3, 1-6 at 3.  However, in two of those letters—Exhibits C and E to the complaint—there is a different date range (October 1, 2023, to September 30, 2024) requested in the "Request for Information" sections of those letters.  See ECF Nos. 1-3 at 1, 1-5 at 1.  Plaintiff's position is that the "October 1, 2024, to the date of your search" time period noted in the "Specific records requested" sections of Exhibits C and E are typos and that the earlier period of October 1, 2023, to September 30, 2024, applies.  Plaintiff contends that DHS should have known those dates were typos because in the "Request Description" field in the FOIA SecureRelease Portal,[1] Plaintiff described its request as seeking records from October 1, 2023, to September 30, 2024, and because Plaintiff submitted a separate request for the later time period which would be duplicative unless the date ranges are interpreted differently.  DHS's position is that all of Plaintiff's FOIA requests clearly state under "Specific records requested" that the requested time period is October 1, 2024, to the date of the search, and that Plaintiff is only entitled to seek relief in this action for the records that were actually requested.  Counsel will continue to discuss this disagreement in an attempt to reach resolution by the next status letter.

DHS ran a search through the CRCL database for responsive records during the time period October 1, 2024, to the date of the search.  That search yielded over 1,400 cases with potentially responsive information.  As each case contains multiple documents and files, the total number of pages that DHS will have to review for responsiveness and any exemptions/withholdings will be significantly higher.  If the date range of the FOIA request is expanded to include records dating back to October 1, 2023, DHS expects the number of potentially responsive cases to more than double.

During counsel's meet-and-confer discussions, counsel for the Government indicated that many of Plaintiff's search terms are overbroad and likely pulling in "false hits" for records not related to pregnant, postpartum, or nursing women in immigration detention, or allegations of sexual assault or harassment.  In response, Plaintiff agreed to narrow two of the search terms (Plaintiff agreed to replace the term "labor" with "labor and delivery," and agreed to exclude any cases containing "birth certificate" from the "birth" search term results), and agreed to limit its

---

[1] The FOIA SecureRelease Portal is an online portal for the submission of FOIA requests to federal agencies.  The portal allows requesters to upload PDF or Word documents containing their FOIA requests, and also prompts users to complete several form fields describing their requests, including a field titled "Request Description."

requests to cases involving female complainants.  DHS's position is that even with these modifications, the request remains overbroad and has proposed further narrowing the search terms.  Plaintiff does not believe the request is overbroad but is considering DHS's proposal.  The parties' discussions regarding the search terms and date range remain ongoing.  Once DHS funding is restored, and if the parties are able to reach agreement on the search parameters, counsel will attempt to negotiate a processing schedule.  If the parties are unable to reach agreement, counsel will seek the Court's assistance.

Accordingly, the Government respectfully requests a stay of this action until the date the President signs a bill restoring DHS funding and proposes to file another joint status letter within 30 days after the stay is lifted.  Plaintiff opposes the request for a stay and proposes to file the next joint letter by April 13, 2026.  Counsel are available to provide any additional information requested by the Court and will propose next steps and/or seek relief in the next status letter, as appropriate.  We thank the Court for its consideration.

Respectfully submitted,

JAY CLAYTON
United States Attorney for the
Southern District of New York

By:    /s/ Carly Weinreb
       CARLY WEINREB
       Assistant United States Attorney
       86 Chambers Street, Third Floor
       New York, NY 10007
       Tel: (212) 637-2769
       Carly.Weinreb@usdoj.gov
       *Counsel for Defendants*

Cc:    Alexandra Perloff-Giles, Esq., *Counsel for Plaintiff* (by ECF)

8